## Ralph Wolff & Sons v. New Zealand Insurance Co. of Auckland, New Zealand.

## Same v. Detroit Fire & Marine Insurance Company of Detroit, Michigan.

(Decided March 21, 1933.)

(Common Pleas Branch, Third Division).

HUBBARD & HUBBARD for appellants.

HITE H. HUFFAKER and JOHN R. MOREMAN for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER
—Reversing.

The opinion of Wolff v. Niagara Fire Insurance Co. et al., 236 Ky. 1, 32 S. W. (2d) 548, discloses that H. C. Wolff and R. C. Wolff, partners, suffered a partial loss by fire of their candy factory in December, 1924, and that they had twelve insurance policies on the property for a total sum of $19,500. That case was a consolidation of nine suits on as many policies for the aggregate of $14,500. The verdict was for $2,500 in favor of the plaintiffs ''to cover the amount of the loss and damage by fire and water.'' That was construed to be a finding that the total property loss was $2,500. Since the insurance involved in the consolidated action was 14500/19500 of the whole coverage, judgment was rendered for that fractional part of the total loss fixed by the jury, that is, for $1,858.90, and that judgment was affirmed.

It appears that at the time that case was tried suits against three other companies were pending. For some undisclosed reason they were not consolidated with the others but remained dormant. After the above decision was rendered, the disposition of two of these cases went forward. One was a suit against the New Zealand Insurance Company of Auckland, New Zealand, and the other against the Detroit Fire & Marine Insurance Company, of Detroit, Mich., each being for $1,000, the amount of its policy. Among the several defenses set up in each case was the plea that the policy provided the company should not be liable for a greater proportion of any loss than the amount of the policy bore to the whole insurance covering the property; that in the consolidated cases referred to it had been judicially ascertained and determined that the total loss was $2,500 and by reason thereof the amount of the loss was res judicata and plaintiffs were estopped to assert a greater damage; and that if liable at all it was only for its proportional part, or 1000/19500, to-wit, $128.20. A demurrer to this plea was overruled. Finally, the facts as to the former case and its disposition were stipulated and judgment for $128.20 was rendered

against each company. The two cases were consolidated, and the plaintiffs appeal from those judgments.

The sole question before us, therefore, is one of res judicata, or whether the plaintiffs in these suits are bound by the judgment in their cases against the other nine companies.

It is said in Jeter v. Hewitt, 22 How. 352, 364, 16 L. Ed. 345, that ''res judicata renders white that which is black, and straight that which is crooked.'' But all will agree that there are qualifications and that is not true except when there are certain concurring elements, as where one has had a chance, either personally or by representation, to show that black is black and crooked things are crooked. It is conceded, quite naturally, that in order to render a matter res judicata, among other things, there must be identity of parties or their privies; and that is so though the judgment relied upon as a bar involved the same state of facts. Prewitt v. Wilborn, 184 Ky. 638, 212 S. W. 442; Sim v. Bishop, 177 Ky. 279, 197 S. W. 625; De Charette v. St. Matthews Bank & Trust Co., 214 Ky. 400, 283 S. W. 410, 50 A. L. R. 34; Cairo City Ferry Co. v. Cocke, 244 Ky. 187, 50 S. W. (2d) 508. The subject and principle of res judicata are considered carefully in Hopkins v. Jones, 193 Ky. 281, 235 S. W. 754, and it is pointed out that the rule is also binding upon one who, though not a formal party to the first suit, was actively interested in the case and had participated in its prosecution so as to constitute himself a real party. See, also, Amburgey v. Adams, 196 Ky. 646, 245 S. W. 514. The defendants in these actions were not parties to the other one and in no way participated in their defense. There is nothing to show that they even had notice of the pendency of the other suits. Cf. Metropolitan Casualty Insurance Co. v. Albritton, 214 Ky. 16, 282 S. W. 187. Hence we come to the question whether they were in privity with those defendants so as to make the judgment binding upon the plaintiffs and themselves.

From an early period privies have been classified as in law, in blood, or in estate; but the classification is not of any importance in considering the operation of judgments. Those in privity to a party to the litigation are bound because of derivative rights of property —because they have succeeded to some estate or interest—and the extent of the estoppel so far as they

are concerned is limited to controversies affecting this estate or interest. To that extent, and only to that extent, of succession to an estate or interest formerly held by another, can there be any privity with them, no matter what were or are their relations to each other or to the same property. "The fact that persons are interested in the same question or in proving the same facts, or that the result of the litigation involving the other does not make them privies." Section 438, Freeman on Judgments. See, also, 15 R. C. L. 1015; 50 C. J. 405. The interests must have been acquired subsequent to the commencement of the action. 34 C. J. 974. There was no derivative right or succession of interest in these parties from the defendants in the former suits.

The appellees rest their argument of privity upon what they say is the contractual relation, that is, in effect that as each policy contained the apportionment or contribution clause, they were and are bound together in a common cause. Counsel quotes in this connection a definition of "privity of contract." That the insurers were mutually interested in holding down the amount of the loss to be adjudged is unquestioned. But each had an independent contract. "Privity of contract" implies a connection, mutuality of will, and interaction of the parties arising from a contract. It is a relationship that exists between them. 50 C. J. 408; 3 Words and Phrases, Fourth Series, p. 182; McCleery v. Woodmen of the World, 136 Or. 407, 297 P. 345, 299 P. 1004; Bonfils v. McDonald, 84 Colo. 325, 270 P. 650; Hyink v. Low Line Irrigation Company, 62 Mont. 401, 205 P. 236. True it is there may be such a contractual relationship that a party becomes bound under certain conditions by the action of another in regard to the matter involved in a suit or by the judgment, such as where he is responsible over, as a warrantor, or as an indemnitor, or as a surety. 15 R. C. L. 1017-1020. But we cannot see the application here. The stipulation in the respective contracts of insurance upon the appellants' property was that the company would be liable only for its proportionate share of any loss sustained if other insurance contracts should be made. This, of course, was to avoid duplication of indemnity and to prevent overinsurance. There was no contract nor privity of contract among the insurers. Sim v. Bishop, supra. It may be doubted that such would have been

claimed had the loss been fixed by the former judgment at what the companies regarded as excessive. To bind the plaintiffs the defendants must also have been bound, for an estoppel is mutual. Sim v. Bishop, supra; Middleton v. Grans, 229 Ky. 640, 17 S. W. (2d) 741; R. C. L. 956.

The foregoing principles of the doctrine of res judicata have been considered in their relation to insurance policies of this kind and the rule held inapplicable. Thus the fact that a recovery has been denied on one policy does not affect the contribution clause of another nor increase the liability. 6 Cooley's Briefs on Insurance, 5114. In section 2148 of Couch's Cyclopedia of Insurance Law, it is written:

"Applying the rule that to constitute res judicata four elements must concur—identity in the thing sued for; identity of cause of action; identity of persons and of property; and identity of quality in the persons for or against whom the claim is made —a judgment against a fraternal society in favor of certain beneficiaries is not res judicata of the claim of the guardian of another beneficiary against the society."

As further refuting the view that the concurrent or pro rata insurance clauses in the several policies so interlocked the contracts as to make them one in effect and a settlement with one company binding upon another, it is held that insurers cannot avail themselves of an adjustment by the insured with another insurer either to defeat recovery or reduce the amount of liability under their contract; and that in ascertaining a company's proportionate share of the loss no regard is to be had to the fact that some of the companies have been settled with for a less sum than they were liable for or have paid more than their share. 6 Cooley's Briefs on Insurance, p. 5129; 5 Joyce on Insurance, sec. 3472; 26 C. J. 361; Georgia Co-operative Fire Association v. Harris, 124 Ga. 114, 52 S. E. 88. The case cited covered a compromised settlement, but there can be no difference when the settlement is pursuant to a judicial determination.

Furthermore, while a different view is taken by some courts, we are aligned with those which hold that a judgment in favor of less than all the parties to a

contract does not bar a suit against others on the same cause of action. Annotations, 3 A. L. R. 124; Owingsville & Mt. Sterling Turnpike Company v. Hamilton, 53 S. W. 5, 21 Ky. Law Rep. 815. It is so specified by section 27 of our Civil Code of Practice.

We cannot agree with the appellees that Central States Fire Insurance Company v. Jenkins, 220 Ky. 566, 295 S. W. 855, 54 A. L. R. 86, is decisive of this case or even applicable to it. There were in effect two policies on a partition wall between storerooms owned by the same man. The validity of the pro rata insurance clause was reiterated, and it was only held that the insured could not collect from both insurers the value of the destroyed wall, as that would be duplicating tl e indemnity, and that the appellant was liable only for its proportionate part of the loss. The extent of the loss, represented by the cost of replacing the division wall, was not in question; it appearing to have been agreed upon by all parties.

It seems to the court, therefore, that the judgment holding the appellants to be bound by the judgment in the former suit is erroneous. It is accordingly reversed, and the case remanded for consistent proceedings.