**SACHS v. STATE MUT. LIFE ASSUR. CO. OF WORCESTER, MASS.**

No. 1457.

United States District Court
W. D. Kentucky.

Feb. 19, 1949.

Steinfeld & Steinfeld, of Louisville, Ky., for plaintiff.

R. Lee Blackwell and Bullitt, Dawson & Tarrant, all of Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

This case is before the Court on the motion of plaintiff to strike from the answer of the defendant the third defense.

The third defense in the answer is a plea of res judicata.

Ruth B. Sachs was the original complainant and Joan Sachs Reis subsequently filed her intervening complaint, adopting all of the allegations of the original complaint and joining in the prayer thereof.

Plaintiff invoked the jurisdiction of this Court under the provisions of Title 28, U.S.C.A., § 41(1), now Title 28, § 1332, the requisite diversity existing and the matter in controversy being a claim to recover $25,000 as the aggregate sum alleged to be

due her upon four policies of life insurance issued to Joseph G. Sachs, Jr.

Each of the four policies contained a double indemnity provision providing, in substance, that while the policy was in effect and prior to the Assured reaching the age of sixty-five years, the Company would pay an additional amount equivalent to the face of the policy upon receipt of due proof that the Assured came to his death within ninety days after an injury was sustained, evidenced by a visible contusion or wound on the exterior of the body, effected solely through external and violent means directly and independently of all other causes.

It is alleged, with respect to each policy, that the death benefit was paid, but that the defendant had refused to pay the benefits provided by the policy under the double indemnity provisions.

The answer of the defendant admitted the execution and delivery of the policies, payment of the premiums, the death of Mr. Sachs prior to reaching the age of sixty-five, its payment of the death benefits to Mrs. Sachs and alleged affirmatively in the second defense of the answer that Mr. Sachs' death resulted both directly and indirectly from physical conditions and infirmity to-wit, heart disease, angina pectoris, coronary thrombosis, coronary arteriosclerosis, and coronary and artery occlusion.

It is alleged in the third defense that Mr. Sachs died testate and that by the terms of his will, the plaintiff Mrs. Sachs was appointed and since has acted, as executrix of such will; that testator devised all of his property unto the plaintiff, Mrs. Sachs, absolutely and in fee simple and that on November 23, 1945, after all testator's debts and obligations had been fully paid, Mrs. Sachs, as executrix, commenced in the Jefferson Circuit Court, a common law action against the Independence Insurance Company, as defendant, to recover $2,250 accidental death benefit upon a policy of insurance issued to Mr. Sachs, in which policy Mrs. Sachs, individually and in her personal capacity as sole legatee under the will, was the beneficial and equitable owner of all the proceeds; that it was there claimed by Mrs. Sachs that the Assured, while riding in an automobile, as a passenger in a seat regularly constructed for a passenger, sustained bodily injuries by the wrecking of such automobile while being operated on a public highway, from which his death resulted on January 1, 1945, directly, indirectly and exclusive of all other causes, from bodily injuries effected solely through external, violent and accidental means; that the Independence Insurance Company filed its answer, admitting the execution and delivery of the policy and payment of all premiums thereon, but denying all of the other allegations, particularly the allegations with respect to the alleged accident and cause of death, and affirmatively plead that the death of the Assured Sachs was caused or contributed to directly and indirectly by disease, infirmity or physical impairment, to-wit, heart trouble and that the policy contained the following provisions—

"This insurance does not cover * * * death, disability or other loss caused or contributed to directly or indirectly by * * * any disease, infirmity * * * or physical impairment";

that on September 16, 1946, the former action proceeded to trial before the Court, without the intervention of a jury and the Court, after hearing the evidence, made and stated in writing its findings of fact and conclusions of law, finding substantially that the death of the Assured did not result from accidental bodily injuries independently and exclusive of all other causes and that the death of the Assured was due both to accident and to the diseased condition of the Assured and that on said findings of fact and conclusions of law, a judgment was entered, dismissing Mrs. Sachs' petition.

There is attached as exhibits to the answer in this action, authenticated copies of the pleadings, findings and conclusions of the Court and judgment.

It is further alleged that the action was appealed by Mrs. Sachs to the Court of Appeals of Kentucky and that on January 23, 1948, the Court affirmed the judgment, and refers to the opinion of the Court of Appeals in Sachs v. Independence Ins. Co., 306 Ky. 385, 208 S.W.2d 61.

It is appropriately alleged that the claims made in this action and all the essential and material issues and facts here involved,

were involved in the former action and that Mrs. Sachs is estopped by the doctrine of res judicata, again, and in this action, to assert such claims, because of the former adverse determination.

Counsel for defendant presents an interesting and logical argument in support of his contention, that the doctrine of res judicata is applicable. He begins with the case of Chicago, Rock Island & Pacific Railway Company v. Schendel, Adm'r, 270 U.S. 611, 46 S.Ct. 420, 70 L.Ed. 757, 53 A.L.R. 1265. In that case, the plaintiff, as personal representative of her husband's estate, instituted an action, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages on account of his death. There was interposed as a plea of res judicata, a prior proceeding instituted before the Iowa Industrial Commissioner, under the Iowa Workmen's Compensation Act, in which the widow individually was a party defendant. It had been adjudged that the deceased was engaged in intrastate commerce and that the widow was entitled to the measure of compensation provided by the Workmen's Compensation Act. The point was there made that there was no identity of parties, because in the compensation proceedings the widow appeared individually while under the Federal Employers' Liability Act, the action could only be maintained under the terms of that Act by the personal representative. The Supreme Court held that in legal contemplation there was identity of persons, because both proceedings were for the benefit of the widow.

The case relied upon by defendant's Counsel is ample authority to support his contention that there was sufficient identity of the parties plaintiff. Counsel for plaintiff, in this action, does not seriously contend otherwise. But, it is defendant's contention that the doctrine of res judicata is rooted in public policy and concerns individual litigants only in secondary importance; that public policy requires a definite end to litigation and that when a party has had and has utilized an opportunity once of trying an issue of fact, he can not thereafter retry that issue of fact by using a new adversary.

Defendant relies upon Taylor v. Sartorious, 130 Mo.App. 23, 108 S.W. 1089; Coca-Cola Company v. Pepsi-Cola Company, 6 W.W.Harr., Del., 124, 172 A. 260; Berhard v. Bank of America National Trust & Savings Ass'n, 19 Cal.2d 892, 122 P.2d 892.

There can be no doubt but that the substance of the holding in each of the cases referred to is that there is mutual estoppel where there is identity of issue and where there has been a judgment on the merits in an action in which the one against whom the former judgment is invoked was a party. In the Pepsi-Cola case, the Court said [6 W.W.Harr., Del. 124, 172 A. 263]—

"* * * we are of the opinion that a plaintiff who deliberately selects his forum and there unsuccessfully presents his proofs, is bound by such adverse judgment in a second suit involving all the identical issues already decided. The requirement of mutuality must yield to public policy. To hold otherwise would be to allow repeated litigation of identical questions, expressly adjudicated, and to allow a litigant having lost on a question of fact to re-open and re-try all the old issues each time he can obtain a new adversary not in privity with his former one."

In the case of Bernhard v. Bank of America Nat. Trust & Savings Ass'n, supra, 122 P.2d at page 894, the Court said—

"The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted. The requirement of due process of law forbid the assertion of a plea of res judicata *against* a party unless he was bound by the earlier litigation in which the matter was decided. (Emphasis added.) (See cases cited.) He is bound by that litigation only if he has been a party thereto or in privity with a party thereto. Ibid. *There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.* No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judi-

cata against a party who was bound by it is difficult to comprehend. See 7 Bentham's Works, Bowring's Ed. 171. Many courts have abandoned the requirement of mutuality and confined the requirement of privity to the party against whom the plea of res judicata is asserted." (Emphasis added.)

The application of this holding to the case at bar would preclude Mrs. Sachs, now suing individually, to litigate anew the issue whether or not Mr. Sachs' death resulted, directly or indirectly, from any physical disease or infirmity, specifically heart trouble, when she has so lately and unsuccessfully litigated the same issue in the former action, where she sued as Executrix, but solely for her individual benefit and received an adverse decision.

Justice Frankfurter, writing for the Supreme Court in the case of Guaranty Trust Company v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231, says that the nub of the policy underlying Erie Railroad v. Tompkins is that for the same transaction, the accident of a suit by a nonresident litigant in a Federal Court instead of a State Court a block away should not lead to a substantially different result.

The nub of the res judicata doctrine contended for by Counsel for defendant would preclude a plaintiff, after litigating unsuccessfully an issue of fact in the State Court, where the amount in controversy was not sufficient to confer jurisdiction in a Federal Court, from afterwards litigating the identical question in a court a block away, where a substantially different result might be obtained, because of the presence of diversity of citizenship and sufficiency in jurisdictional amount.

Counsel for plaintiff contends that under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the decision on this motion must be determined by the law of Kentucky.

In the case of Guaranty Trust Company v. York, supra, the Court said [326 U.S. 99, 65 S.Ct. 1469]—

"But since a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recovery is made unavailable by the State, nor can it substantially affect the enforcement of the right given by the State. * * * the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court."

In the case of Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 662, 91 L.Ed. 832, it was determined that the defense of res judicata interposed in an action where federal jurisdiction exists only by virtue of diversity of citizenship, is determined by the State law. The Court said—

"After an adverse decision against Bullington on a cause of action created by State law, Bullington wants to start all over again in another North Carolina court, albeit a federal court. The first litigation raised and adjudicated federal issues every one of which is again involved in the second suit. To allow such a second suit is to say that a federal right in issue in a State court evaporates because the State court calls it a State right and the litigant accepts the decision. If tolerated, our federal system would afford fine opportunities for needlessly multiplying litigation in this way. The doctrine of res judicata is a barrier against it. Litigation is the means for vindicating rights, but it may also involve unwarranted friction and waste. The doctrine of res judicata reflects the refusal of law to tolerate needless litigation. Litigation is needless if, by fair process, a controversy has once gone through the courts to conclusion. Compare, e. g., Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244, 64 S.Ct. 997, 1000, 88 L.Ed. 1250. And it has gone through, if issues that were or could have been dealt with in an earlier litigation are raised anew between the same parties. Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329." (Emphasis added.)

We, therefore, conclude that the law of res judicata applicable in this case is as announced by the Court of Appeals of Kentucky.

In the case of Sim v. Bishop, 177 Ky. 279, 282, 197 S.W. 625, 626, the Court said—

"No doctrine is better settled than that a judgment between different parties, involving the same state of facts, is not res judicata. Our meaning will be better explained by the following statement of the law contained in 23 Cyc. 1237: 'Persons Concluded by Judgments. * * * To constitute a judgment an estoppel, there must be an identity of parties as well as of the subject-matter; that is, it is necessary that the parties as between whom the judgment is claimed to be an estoppel must have been parties to the action in which it was rendered, in the same capacity and in the same antagonistic relation, or else they must be in privity with the parties in such former action.'"

In the case of Hopkins v. Jones, 193 Ky. 281, 284, 235 S.W. 754, 756, the Court said—

"The doctrine of res judicata, as often announced by this court means that where a question or a fact is once litigated and determined by the judgment of a court of competent jurisdiction no fact or question that was litigated, or could have been litigated therein, can thereafter be relitigated *by the same parties or their privies*." (Emphasis added.)

In Ralph Wolff & Sons v. New Zealand Insurance Company, 248 Ky. 304, 58 S.W. 2d 623, 624, the plaintiffs instituted actions on twelve policies of insurance, aggregating in coverage $19,500. Nine of the separate suits were consolidated and tried, and a verdict determining that the entire damage suffered by the plaintiff was $2,500. After the consolidated action had been tried, the three remaining actions came on for trial and the defendants interposed a plea to res judicata, claiming that the total loss sustained by the plaintiff had been ascertained in the trial of the consolidated action to be $2,500 and that by reason of the presence in each of the twelve policies of an apportionment or contribution clause, limiting the amount of recovery on each policy to that proportion of the total loss which the amount of that particular policy bore to the total amount of insurance, the plaintiff was bound by the amount of the total loss ascertained in the previous trial, to-wit, $2,500.

The Court said—

"It is conceded, quite naturally, that in order to render a matter res judicata, among other things, there must be identity of parties or their privies; and that is so though the judgment relied upon as a bar involved the same state of facts."

The apportionment or contribution clause in each of the twelve policies was held not to bind together the defendants as privies and not to establish "privity of contract."

The Court held that mutuality is essential, saying—

"To bind the plaintiffs, the defendants must also have been bound, for an estoppel is always mutual. * * * while a different view is taken by some courts, we are aligned with those who hold that a judgment in favor of less than all the parties to a contract does not bar a suit against others on the same cause of action."

See also Travelers Indemnity Company v. Moore, 304 Ky. 456, 201 S.W.2d 7; Montgomery v. Taylor-Green Gas Company, Inc., 306 Ky. 256, 206 S.W.2d 919, 920.

In the last case referred to, the Court said—

"* * * the rule is that a judgment may not successfully be pleaded as res judicata, or as an estoppel where there is no identity, or at least privity, of parties in the same antagonistic relation. An estoppel must be mutual and cannot apply as against a stranger to a judgment, since one's rights cannot be determined without an opportunity to present his side of the controversy."

It therefore appears that the rule in Kentucky requires mutuality and there is no contention by the defendant in this case that the element of mutuality exists.

Controlled, therefore, by Erie Railroad Company v. Tompkins, supra, this Court has no alternative save to apply the doctrine of res judicata as adjudicated by

the Courts of Kentucky. For that reason, the motion of the plaintiff to strike the third defense from defendant's answer will be sustained.

An order to that effect will be tendered by Counsel for plaintiff.